UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LARRY SHELTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV1864 CDP |
| ) | |
| JAMES PURKETT, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Larry Shelton is a state prisoner seeking money damages and an injunction under 42 U.S.C. § 1983. He alleges that prison officials at the Missouri Eastern Reception Diagnostic and Correctional Center violated his rights under the 8th Amendment. His complaint alleges that he was improperly forced to work even though he has been getting Supplemental Security Income for a number of years, and that he was denied appropriate medical treatment when he slipped while working and hurt his leg.

Three motions to dismiss and a motion for summary judgment are pending. Plaintiff has responded to some of the motions and I previously gave him additional time, up to July 31, to file additional responses to the motions. He did not file anything else, and that deadline has passed. In ruling on these motions, I have

-1-

considered all the information that plaintiff has provided to the court as to each claim and defendant. Even so, I find that he has failed to state a claim on which relief may be granted as to most defendants, and that the one defendant who has filed a motion for summary judgment is entitled to judgment as a matter of law.

**Procedural History**

This case has a somewhat tortured procedural history, both because the court mistakenly assumed that service had been waived on certain defendants, and because plaintiff did not know the names of all the defendants he was attempting to sue when he filed the complaint. To clarify the record and correct my previous mistake, I will set out the procedural history of the case.

Plaintiff's pro se complaint lists the following defendants: James Purkett, Superintendent; Clarence Hamlin, Certified Caseworker Assistant; Mike Lundy,[1] Associate Superintendent; Jane Doe, Culinary Supervisor; Falcon, Cook III; Conley, Regional Medical Director; Bunch, Regional Administrator; Polys, Registered Nurse; Geile, Registered Nurse/Director of Nurses; and Roper, Health Services Administrator.

Once the court completed the in forma pauperis review and ruled that process

---

[1]Some of the filings appear to say "Kundy," and the Court picked up that spelling, but everyone agrees the proper defendant is Mike Lundy, and I will have the Clerk's docket sheet corrected to reflect the proper spelling.

should issue, the Clerk of Court sent standard waiver of service letters, pursuant to procedures that have been worked out with State of Missouri defendants in prisoner cases. The Clerk sent two letters: one addressed to Gail Vasterling, Office of Missouri Attorney General, regarding defendants "James Purkett, Mike Kundy, Jane Doe, Clarence Hamlin, Unknown Falcon, and Unknown Bunch," and the other to John Treu, counsel for Correctional Medical Services, regarding defendants "Unknown Conley, Unknown Roper, Unknown Geile and Unknown Polys." Each letter stated that the court understood these counsel would waive service with respect to the listed defendants and file a responsive pleading within sixty days, or within that time notify the court if service could not be waived for any defendant.

Counsel Treu indicated that he would waive service for Dr. Elizabeth Conley only. The Attorney General's office, through counsel Joseph McGuire, indicated that he would waive service for James Purkett, Clarence Hamlin, Pedro Falcon, Kenneth Bunch, and Mike Lundy. The court then notified plaintiff that he must provide the name and address for defendant Jane Doe so that the marshal could make service. Plaintiff notified the court that Jane Doe was actually Sharon Garrigus, and eventually the Attorney General's office entered an appearance for her as well.

The court should have also requested that plaintiff provide information for the

defendants we now know were intended to be Sharon Roper, Shawn Geile, and Dawn Polys. We neglected to do so, and I mistakenly believed these defendants had been served. Additionally, although the Attorney General waived service on Kenneth Bunch, examination of the documents presented on the various motions indicates that plaintiff most likely intended to sue Jacinta Bunch, who is listed as a Regional Administrator on one of the institutional responses to plaintiff's grievances in this case.

Defendants Purkett, Lundy, Hamlin, Falcon and Bunch filed a motion to dismiss, which was later joined by defendants Elizabeth Conley and Sharon Garrigus. That motion argued that plaintiff's case must be dismissed because he had failed to exhaust his administrative remedies, and also argued that the defendants were entitled to immunity under the Eleventh Amendment with regard to the claims for money damages, and that the claims for injunctive relief were moot. Defendant Conley later filed a motion for summary judgment, arguing that the undisputed facts showed she was not deliberately indifferent to plaintiff's serious medical needs.

Plaintiff did not respond to the motions, so I sent an order for him to show cause why they should not be granted. He filed a response, setting out his arguments about his case, and also asked for additional time to respond. I granted him until July 31 to file an additional response, but he did not do so. Although it is

not sworn, I will consider plaintiff's response as if it were an affidavit, as it appears he intended to present his own testimony in response to the motions.

## Plaintiff's Claims

Plaintiff's claims arise out of his incarceration at the Missouri Eastern Reception Diagnostic and Correctional Center. He is now located at the Northeast Correctional Center. He alleges that in October and November of 2003 defendants Purkett, Lundy, Garrigus, Hamlin and Falcon forced him to work even though he has been getting Supplemental Security Income for a number of years. He alleges that he slipped while working on November 11, 2003 and injured his back and leg, and that defendants Conley, Bunch, Polys, and Geile denied him medical treatment. His later papers indicate that Nurse Polys waited forty-five minutes to provide him with pain medications because the "mental crazy offenders were getting their medications at the time" and that the other defendants refused to refer him to a chiropractor. He seeks injunctive relief, compensatory, nominal, and punitive damages.

## Exhaustion of Prison Remedies

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust administrative remedies before filing suit: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress's goal in enacting this statute was "to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter v. Nussle, 534 U.S. 516, 524-25 (2002). Administrative remedies could eliminate the need for further litigation, weed out frivolous claims, or, at the least, create an administrative record for use in court. Id. at 525. "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Id. at 524 (citing Booth v. Churner, 532 U.S. 731, 741 (2001)). "[A]n inmate must exhaust administrative remedies *before* filing suit in federal court. . . . If exhaustion was not completed at the time of filing, dismissal is mandatory." Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003).

The Eighth Circuit does not consider the PLRA's requirement of exhaustion of administrative remedies to be a heightened pleading requirement. It is an affirmative defense, which the defendant has the burden of pleading and proving. Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001)(citing Chelette v. Harris, 229 F.3d 684, 686-88 (8th Cir. 2000)). See also Nerness v. Johnson, 401 F.3d 874, 876 (8th Cir. 2005).

The burden is on the defendants to show that the plaintiff failed to exhaust all

available administrative remedies under the PLRA. Foulk, 262 F.3d at 697. Shelton states in his complaint that he did present the facts at issue to the prison grievance system. Defendants argue that plaintiff did not present his claims against all defendants through the grievance system, and they attach to the motion to dismiss copies of five IRRs filed by Shelton, along with a certification that the copies are true and correct copies.

The IRRs that defendants provided do not relate to the matters raised in the complaint. They are all dated at least a year after the incidents at issue in this case. Defendants did not provide any affidavit or other evidence stating these were the only grievances in plaintiff's file, nor did they file any affidavit or other evidence stating that no IRRs had been filed with regard to this matter or that IRRs had been filed but abandoned somewhere in the appeals process. In fact, Conley's motion for summary judgment attaches a grievance related to the medical claim. That grievance appears to have been pursued through all the proper appeal levels.

Defendants have failed to meet their burden of showing that plaintiff failed to exhaust his administrative remedies, and so I will deny their motion to dismiss for failure to exhaust.

**Eleventh Amendment Immunity**

Defendants Purkett, Lundy, Garrigus, Hamlin, Falcon, and Bunch also

contend that Shelton's complaint is barred by the Eleventh Amendment.² Generally, "in the absence of consent a suit in which the State or one of its agencies or departments is named is proscribed by the Eleventh Amendment." Pennhurst State School & Hosp. v. Holderman, 465 U.S. 89, 100 (1984). Section 1983 does not abrogate the Eleventh Amendment Immunity of states and their agencies. See Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997). The Eleventh Amendment bar to suit brought against states and their agencies applies both to suits for damages and suits for injunctive relief. Pennhurst, 465 U.S. at 100-01.

Section 1983 damage claims against individual defendants acting in their official capacities are barred either by the Eleventh Amendment or because the defendants in their official capacities are not "persons" for § 1983 purposes. Murphy, 127 F.3d at 754. However, "state officials acting in their official capacities are § 1983 'persons' when sued for prospective relief, and the Eleventh Amendment does not bar such relief." Id. Finally, "[t]he Eleventh Amendment does not bar damage claims against state officials acting in their personal capacities." Id.

Where a plaintiff's complaint is silent about the capacity in which he is suing the defendant, I must interpret the complaint as including only official capacity claims. Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir. 1995);

---

² Defendant Conley does not raise this claim in her motion to dismiss.

Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989). Here, Shelton's complaint does not indicate in what capacity he is suing Defendants Purkett, Lundy, Garrigus, Hamlin, Falcon, or Bunch. Therefore, I must assume he is only suing the defendants in their official capacities. As a result, all of Shelton's damages claims against Defendants Purkett, Lundy, Garrigus, Hamlin, Falcon, and Bunch must be dismissed.

## Injunctive Relief

Shelton's claims for prospective relief must also be dismissed, because they are moot. A plaintiff seeking injunctive or declaratory relief must show a real and immediate threat that he is likely to be wronged again. Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). Additionally, "a prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions." Id. Here, Shelton is no longer incarcerated at the Missouri Eastern Correctional Center. As a result, he no longer is subject to the conditions for which he seeks injunctive relief. Therefore, I will grant the motions to dismiss of Defendants Purkett, Lundy, Garrigus, Hamlin, Falcon, and Bunch.

## Deliberate Indifference to Serious Medical Needs

Shelton alleged that the remaining defendants violated his constitutional rights by denying medical treatment. His later briefs indicate that he believes Polys is liable because she failed to provide him with pain medication for forty-five minutes

after he injured his leg and back, and that he believes the other defendants are liable for failing to send him to a chiropractor. Conley, the only properly served medical defendant, has moved for summary judgment. Although Shelton filed a response to the motions to dismiss and was granted additional time to file an additional response, he did not directly address the motion for summary judgment. His time for responding to all the motions has expired some time ago. Even if I consider his response to the motion to dismiss as if it were an affidavit, however, it is clear that Conley is entitled to judgment as a matter of law.

Conley's evidence, which is undisputed even when Shelton's affidavit is considered, shows that Nurse Dawn Polys responded to the kitchen in response to a call that Shelton had fallen. After Polys and others assisted him to stand, she assessed that there was no rotation to either leg, that he was able to ambulate a short distance with mild limping, and that he stated "I'll be OK if I can get my cane." After notifying Dr. Stine about the situation, Nurse Polys instructed Shelton to have "bed rest tonight," to return for x-rays the next day, and to take Tylenol and Motrin for any pain. She provided the Tylenol and noted that he indicated he already had Motrin in his cell.

X-rays taken the next day showed no discrete fracture, although they revealed that plaintiff had severe degenerative arthritic changes to his hip and may have had a fracture in the past.

On November 21, 2003, plaintiff was seen by a Doctor Stine, who prescribed additional pain medication and restrictions on plaintiff's work to include lifting no more than ten pounds, no mopping and no sweeping.

Shelton filed an Informal Resolution Request on December 2, 2003, stating that his back was hurting from the fall and that he would like to see a chiropractor. Nurse Geile denied the IRR, noting that he had been given pain medication and had not asked to see a physician since. She also found that he did not keep his scheduled appointment to discuss the IRR.

Plaintiff then filed a Grievance, stating that he had not been called for the meeting that Nurse Geile stated he missed, and stating that he still wanted to see a chiropractor. Health Services Administrator Sharon Roper denied the grievance, finding that Dr. Stine had not made any referral to a chiropractor.

Shelton then filed a Grievance Appeal. This was denied, with the explanation that a chiropractor is not a licensed medical physician, and that he had been evaluated by a licensed physician who had determined a plan of care, and that there was no objective evidence to support the appeal. The appeal denial was signed by Jacinda Bunch, Regional Administrator, and then was reviewed and signed by Elizabeth Conley, Regional Medical Director.

In order to prevail on his claims against Conley, Roper, Geile, and Polys (and Jacinta Bunch, if that is who he intended to sue), Shelton must demonstrate that they

were "deliberately indifferent" to his "serious medical needs." Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citing Camberos v. Branstad, 73 F.3d 174, 175 (8th Cir. 1995)). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos, 73 F.3d at 176. To be "deliberately indifferent" a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). When a claim of deliberate indifference is based on a delay in treatment, the inmate "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997); accord, Robinson v. Hager, 292 F.3d 560, 564 (8th Cir. 2002).

Shelton asserts that Defendant Polys waited forty-five minutes to provide him with pain medication following his slip and fall while working on November 11, 2003. This does not constitute deliberate indifference. It is undisputed that he was ultimately treated and found to have no rotation to either leg, and that he was able to ambulate a short distance without limping. X-rays taken the following morning showed no discrete fracture. As noted above, when the allegation of deliberate indifference is that the delay in treatment is the constitutional violation, "the

-12-

objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." Crowley, 109 F.3d at 502. In Keeper v. King the plaintiff prisoner suffered a stroke but instead of being transferred to the hospital immediately, he "was allowed to lie on a mattress on the floor [for more than twelve hours], repeatedly voiding on himself." 130 F.3d 1309, 1315 (8th Cir. 1997). Even in that much more egregious situation, deliberate indifference was not shown because there was no evidence that any delay in getting treatment for Keeper had any detrimental effect on his condition. Here plaintiff has presented no evidence that could tend to show that the forty-five minute delay in treating him had any effect on his medical condition. Therefore, even if Polys had been served with process, she would be entitled to judgment as a matter of law on plaintiff's claim that she was deliberately indifferent to his serious medical needs.

Shelton's complaint may also be interpreted to allege deliberate indifference with regard to Defendant Conley's decision to deny him access to a chiropractor. Doctors may exercise their independent medical judgment in determining what treatment to give a prisoner. See Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). According to the Eighth Circuit Court of Appeals, "[t]he existence of a possible alternative course of treatment, which 'may or may not' have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably but ultimately failed to avert the harm." Dulany, 132 F.3d at 1241.

A plaintiff cannot establish deliberate indifference by "showing that another physician might have ordered different tests and treatment." Id. at 1242 (citations omitted). A prisoner's claims do not rise to the level of deliberate indifference merely because the prisoner had a "difference of opinion over matters of expert medical judgment or prescribed course of medical treatment." Randall v. Wyrick, 642 F.2d 304, 308 (8th Cir. 1981).

The crux of this issue is that Conley did not reverse the decision of a non-defendant physician who had not referred Shelton to a chiropractor. Conley's actions do not constitute deliberate indifference as a matter of law. As a physician, Conley was permitted to use her medical judgment to decide whether or not to refer Shelton to a chiropractor. See Long v. Nix, 86 F.3d at 765-66 (holding that a prisoner is not constitutionally entitled to any particular type of medical treatment and that a doctor's decision not to prescribe tranquilizers was not a constitutional violation as it was a matter of medical judgment). Conley reviewed the records, which showed that the examining doctor, Dr. Stine, had not made a referral to a chiropractor. The records also showed that plaintiff had not given Dr. Stine's plan of care an opportunity to work. Under these undisputed facts, Conley's decisions regarding Shelton's treatment do not rise to the level of deliberate indifference. Conley is entitled to summary judgment.

Plaintiff's complaint may also be interpreted to allege that Defendants

Conley, Geile, Bunch and Roper's review of his IRR and grievance constituted deliberate indifference, but this claim should also fail because Shelton has failed to present evidence that suggests that they demonstrated deliberate indifference to his medical needs through their supervision. He does not allege that any defendant other than Polys (and Dr. Stine, who he did not sue) were directly involved with providing him medical care. The only evidence is that the others reviewed his IRR and grievance. These are really respondeat superior claims, which are not cognizable under 42 U.S.C. § 1983.

The records reflect that the unserved defendants – Roper, Polys, Geile, and Jacinta Bunch – did nothing to violate plaintiff's constitutional rights. Because the complaint as to these defendants is legally frivolous, correcting any service errors or giving plaintiff additional time to serve these defendants would be futile. I will therefore will dismiss plaintiff's complaint against these defendants, because I have determined that they are legally and factually frivolous and fail to state a claim. 28 U.S.C. §1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that the Motions to Dismiss [#13, #23] of Defendants Purkett, Hamlin, Falcon, Bunch, Lundy, and Garrigus are GRANTED.

**IT IS FURTHER ORDERED** that Defendant Conley's Motion to Dismiss [#15] for failure to exhaust is DENIED.

**IT IS FURTHER ORDERED** that Defendant Conley's Motion for Summary Judgment [#26] is GRANTED.

**IT IS FINALLY ORDERED** that plaintiff's claims against Defendants Jacinta Bunch, Sharon Roper, Shawn Geile, and Dawn Polys are dismissed under 28 U.S.C. § 1915(e)(2)(B).

A separate judgment reflecting this decision is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2006.